# UNITED STATES DISTRICT COURT
# DISTRICT OF SOUTH CAROLINA
# FLORENCE DIVISION

| | |
|---|---|
| In re: ) | |
| ) | |
| SENSORMATIC ELECTRONICS ) | |
| CORPORATION, ) | |
| ) | |
|     Plaintiff, ) | |
| ) | |
| vs. ) | Pending in the United States District Court |
| ) |   for the Southern District of Florida |
| THE TAG COMPANY US LLC, ) | |
| PHENIX LABEL COMPANY, and ) | Case No. 06-81105-Civ-Hurley/Hopkins |
| Dennis Gadonniex, ) | |
| ) | |
|     Defendant. ) | |
| _____ ) | |

## MOTION TO ENFORCE SUBPOENA AND COMPEL INSPECTION, AND MEMORANDUM IN SUPPORT THEREOF

Sensormatic Electronics Corporation ("Sensormatic") hereby respectfully moves, pursuant to Fed. R. Civ. 37 and 45, for an order compelling Metglas, Inc. ("Metglas") to permit an inspection of its manufacturing facility and process. For the reasons stated in the following Memorandum, the motion should be granted.

## BACKGROUND

This motion seeks to compel an inspection sought through a subpoena served on Metglas by Sensormatic in connection with a suit for patent infringement and misappropriation of trade secrets pending in the United States District Court for the Southern District of Florida, *Sensormatic Electronics Corporation v. The TAG Company US LLC et al.*, No. 06-81105-Civ-Hurley/Hopkins (S.D. Fla.). In that case, Sensormatic alleges that The TAG Company US LLC ("TAG") and Phenix Label Company ("Phenix") (collectively, "Defendants") infringe several

Sensormatic patents by making and selling certain anti-theft labels intended to be affixed to retail goods, and that key ex-Sensormatic personnel, now associated with TAG and Phenix, misappropriated Sensormatic proprietary information related to the development of its labels. Phenix manufactures the allegedly infringing labels; TAG markets them. Metglas supplies a critical component of the labels.

The labels at issue use acoustomagnetic ("AM") technology. An AM label contains a ribbon called the "resonator" or "active element" and a magnetized metal strip known as a "bias." Unless it is deactivated by a store employee, the label's resonator will resonate at a certain frequency when it is excited by an electromagnetic field produced by a detecting device at the store exit. If such resonance is detected by the detecting device, an alarm sounds.

Metglas manufactures a key component of the TAG/Phenix labels – the resonators. In addition, Metglas's role goes beyond that of a mere supplier. In discovery to date, both TAG and Phenix contend that it was Metglas who designed the resonator and suggested the use of the specific material used to make the resonators in the allegedly infringing labels.[1] Metglas, with full knowledge of the patents now in suit, demanded that TAG and Phenix indemnify it from any patent-infringement claims before it would provide the resonator material to make the allegedly infringing product. *See* Deposition of David Millure, pursuant to Rule 30(b)(6), at 9 (Exhibit 1, filed under seal in accordance with Metglas's attorneys' eyes only designation).

One of the patents at issue in the patent litigation – United States patent number 5,949,334 (the "'334 patent") – covers labels that contain resonators that are "annealed." *See* '334 patent, col. 12, line 17 (attached as Exhibit 2). Metglas denies that it anneals the

---

[1] Metglas previously was a longtime supplier of resonator material to Sensormatic. Metglas, and its Rule 30(b)(6) designee, Ryusuke Hasegawa, worked with Sensormatic (and the key

2

resonators it makes for Phenix/TAG, but its Rule 30(b)(6) designee, Dr. Hasegawa, testified that there may be disagreements about what constitutes "annealing." Dr. Hasegawa stated that he does not like the word "annealing." He testified that although he has one definition of annealing, others have different definitions. Dr. Hasegawa therefore required specification of the term in order to testify. *See* Deposition of Ryusuke Hasegawa, pursuant to Rule 30(b)(6), at 151-53 (Exhibit 3, filed under seal in accordance with Metglas's attorneys' eyes only designation).

Sensormatic has a good-faith basis to believe that the resonators are annealed. As explained in the attached Declaration of Dr. Robert O'Handley, an expert on magnetic materials at the Massachusetts Institute of Technology, the Metglas material exhibits properties that are typical of annealed materials. *See* Exhibit 4 (attached). Metglas's Rule 30(b)(6) designee, Dr. Hasegawa, acknowledged these properties in his deposition; when asked how the material could exhibit such properties without being annealed, he testified that he had no explanation for why Metglas's material exhibits properties typical of annealed materials. Hasegawa Depo. at 294 (Exhibit 3).

Dr. Hasegawa further testified that one cannot determine whether a material is annealed simply by physical inspection of the finished material. *See id*. at 192 (Exhibit 3). Finally, although Dr. Hasegawa described some aspects of Metglas's manufacturing process, he refused to discuss other potentially relevant aspects, despite Sensormatic's commitment to treat the deposition on an attorneys-eyes-only basis.[2]

---

Sensormatic personnel now with TAG) in trying to adapt Metglas's resonator for use with Sensormatic's label technology.

[2] Among other things, Dr. Hasegawa refused to discuss the details of how Metglas transports the ribbon of material from the quenching step, during which the molten starting material is deposited and cooled, to the winding step of the production process. Hasegawa Depo. at 126

In short, although Metglas denies that it uses annealing, it admits that different people may disagree about what constitutes annealing; it acknowledges that its material exhibits properties typical of annealed materials; it admits it cannot explain those properties; it admits that inspection of the finished material cannot answer the question; and it has refused to disclose certain aspects of its manufacturing process. Under these circumstances, inspection of the Metglas process is the only means available to shed further light on this key issue.

On August 10, 2007, Sensormatic served a subpoena on Metglas which included, among other things, a request to inspect, videotape and sample the Metglas manufacturing process. (A copy of the subpoena is attached as Exhibit 5) On August 23, 2007, Metglas served formal objections to the subpoena. (A copy of those objections is attached as Exhibit 6) Counsel for Sensormatic has attempted in good faith to resolve Metglas's objections, including by proposing a confidentiality agreement and by explaining that the inspection would be conducted by one of Sensormatic's outside counsel and one expert, Dr. O'Handley. It now appears, however, that Metglas is not willing to allow an inspection under any conditions. *See* 10/15/07 Letter from Metglas (attached as Exhibit 7).

## ARGUMENT

Rule 45 provides that a subpoena may command a person to "permit inspection, copying, testing, or sampling of . . . tangible things in the possession, custody or control of that person, or to permit inspection of premises . . . ." Fed. R. Civ. P. 45(a)(1)(C). The discovery available under Rule 45 as to non-parties is coextensive with that available as to parties under Rule 34. *See* 8A Wright, Miller & Marcus, *Federal Practice & Procedure* § 2209 at 391-92 (2d ed. 1994

---

(Exhibit 3). This is an aspect of the Metglas process that Dr. O'Handley states would provide relevant information about whether Metglas anneals its material. *See* Declaration of Dr. Robert O'Handley (attached as Exhibit 4).

4

& 2007 Supp.) (quoting Advisory Committee Note to 1991 amendments to Rule 45: "[t]he non-party witness is subject to the same scope of discovery under this rule as that person would be as a party to whom a request is addressed pursuant to Rule 34"); Fed. R. Civ. P. 34(a)(2) (parties may serve requests to "permit entry upon . . . property . . . for the purpose of inspection and measuring, surveying, photographing, testing, or sampling").

Under these rules, courts in patent-infringement cases have frequently granted inspection of potentially infringing manufacturing facilities and processes. *See, e.g.*, *Minnesota Mining & Mfg. Co., Inc. v. Nippon Carbide Indus. Co., Inc.*, 171 F.R.D. 246, 248-49 (D. Minn. 1997); *Cuno Inc. v. Pall Corp.*, 116 F.R.D. 279, 281 (E.D.N.Y. 1987); *National Dairy Prods. Corp. v. L.D. Schreiber & Co., Inc.*, 61 F.R.D. 581, 582 (E.D. Wis. 1973); *Dow Chem. Co. v. Monsanto*, 256 F. Supp. 315, 317-18 (S.D. Ohio 1966). Moreover, "[t]here is no absolute privilege to protect trade secrets from disclosure during the discovery process. Discovery [of confidential information] is virtually always ordered once the movant has established that the secret information is relevant and necessary." *Ex parte Sealed Air Corp. and Cryovac, Inc.*, 220 F.R.D. 452, 453 (D.S.C. 2004) (internal citations omitted) (in patent infringement case, granting plaintiffs' motion to compel discovery from third party).

Here, as in *Minnesota Mining*, "a plant inspection provides the most efficient and effective means for determining whether a patented process has been infringed." 171 F.R.D. at 248-49. Indeed, as stated in *Dow Chemical*, where infringement relates to a method of production, "no means of determining the methods . . . other than a visual inspection [of the method of production] suggests itself." 256 F. Supp. at 317-18. In this case, the results of analysis of the product are consistent with annealing. Metglas denies that it anneals, but it admits that people can disagree about what "annealing" means; that its material exhibits

properties typical of annealed materials; and that it cannot explain those properties. It admits that physical inspection of the finished product cannot determine whether annealing has occurred. It also has refused to disclose some aspects of its manufacturing process that may be relevant. The only reliable way to resolve the dispute and ascertain whether annealing (or an equivalent) occurs is visual inspection of the manufacturing process.

Sensormatic is willing to conduct the inspection subject to a confidentiality order and whatever other protective measures the Court deems appropriate. It has sought to reach terms on a confidentiality agreement with Metglas but Metglas has been uncooperative. For the Court's convenience, Sensormatic is submitting as Exhibit 8 hereto an acceptable form of confidentiality order. As reflected in that proposed order, Metglas would be free to designate the inspection as "attorneys' eyes only," which would ensure that only outside counsel and Sensormatic's expert witness, Dr. O'Handley, would have access. Dr. O'Handley would be willing to agree to the same confidentiality terms.

Under these circumstances, the requested inspection is justified and should be ordered to proceed, subject to entry of the proposed confidentiality order.

## CONCLUSION

For the reasons stated above, the motion should be granted.

## LOCAL RULE 7.02 CERTIFICATION

Undersigned counsel hereby certifies that prior to filing the instant Motion, counsel for Plaintiff Sensormatic attempted to confer with Metglas's counsel in a good faith effort to resolve the issue raised in the motion. Plaintiff's initial request for inspection was served on August 10, 2007, to which Metglas responded with a formal objection on August 23. Following an

exchange of correspondence between counsel regarding various discovery matters, Plaintiff's counsel reiterated the need to inspect Metglas's manufacturing facility and process. By letter dated October 15, Metglas's counsel responded that it would not permit such an inspection. On October 17, Plaintiff sent another letter explaining its willingness to accommodate Metglas's concerns about confidentiality, but Metglas's counsel has not consented to the requested inspection.

Dated: October 24, 2007

Respectfully submitted,

s/Elbert S. Dorn_____
Elbert S. Dorn (FID # 4895)
*edorn@turnerpadget.com*
Turner, Padget, Graham & Laney P.A.
Founders Centre
2411 North Oak Street
Suite 301
Myrtle Beach, SC 29577
Telephone: (843) 213-5500
Facsimile: (843) 213-5555

Of Counsel:

Bruce R. Genderson
David C. Kiernan
George A. Borden
F. Greg Bowman
Eric K. Chiu
David A. Taylor
WILLIAMS & CONNOLLY LLP
725 Twelfth St., N.W.
Washington, D.C. 20005
Telephone: (202) 434-5000
Facsimile: (202) 434-5029

*Attorneys for Plaintiff Sensormatic Electronics Corporation*

## **CERTIFICATE OF SERVICE**

**I hereby certify** that a true and correct copy of the foregoing was served by U.S. mail on October 24, 2007, on all counsel of record listed on the Service List below.

> s/Elbert S. Dorn_____
> Elbert S. Dorn
> *edorn@turnerpadget.com*
> Turner, Padget, Graham & Laney P.A.
> Founders Centre
> 2411 North Oak Street
> Suite 301
> Myrtle Beach, SC 29577
> Telephone: (843) 213-5500
> Facsimile: (843) 213-5555

| | |
|---|---|
| Robert R. Waters | Leslie J. Lott |
| Jason A. Poling | (*E-Mail:  ljlott@lott-friedland.com*) |
| Olen L. York, III | David K. Friedland |
| Enrico A. Mazzoli | (*E-Mail:  dkfriedland@lfiplaw.com*) |
| Benjamin S. Shively | LOTT & FRIEDLAND, P.A. |
| WATERS LAW OFFICE, PLLC | 355 Alhambra Circle, Suite 1100 |
| 714 Lyndon Lane, Suite #6 | Coral Gables, FL  33134 |
| Louisville, KY 40222 | Tel.: 305-448-7089 |
| Tel.: 502-425-2424 | Fax.: 305-446-6191 |
| Fax. 502-425-9724 | |

*Attorneys for Defendants TAG, Phenix and Dennis Gadonniex*

David M. Pitcher
STAAS & HALSEY LLP
1201 New York Avenue, N.W.
7th Floor
Washington, D.C. 20005
Telephone: (202) 434-1500
Facsimile: (202) 434-1501

*Attorneys for Metglas, Inc.*